IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELINA BLOCKER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| COMMUNITY EDUCATION CENTERS, INC., | : | |
| | : | |
| Defendant. | : | No. 13-5127 |

MEMORANDUM

PRATTER, J.                                                                                                                APRIL 7, 2014

Ms. Blocker is suing Community Education Centers, her former employer, alleging that she was wrongfully terminated from her job in retaliation for having filed a prior EEOC complaint and for advocating against the mistreatment of African-American employees and prisoners. Specifically, she characterizes her claims as being for wrongful termination, breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation/fraud, unjust enrichment, negligence, Title VII retaliation, PHRA retaliation, libel, slander, gross negligence, respondeat superior, harassment, emotional distress, and spoliation. Defendant Community Education Centers moves to dismiss all of Ms. Blocker's claims and has moved to strike several paragraphs from the Complaint. The Court held oral argument on March 18, 2014, and received supplemental briefing thereafter. The Court will grant the Motion in part and deny it in part.

**BACKGROUND**

According to her 37-page Complaint,[1] Ms. Blocker, an African-American female, began her employment at the George W. Hill Correctional Facility as a corrections officer on August 2,

---

[1] Ms. Blocker includes a great deal of background information about allegedly unfair treatment of African American corrections officers in her lengthy Complaint, and as to almost all of that general background

1

2002.[2]  Ms. Blocker was involved in union activities throughout her employment.  This led to her role as a "vocal advocate for co-workers who were also the victims of illegal discrimination at the hands of the prison."  Compl. ¶ 3.  Ms. Blocker's employment was subject to a collective bargaining agreement.  In pertinent part, that collective bargaining agreement states:

> It is the specific intention of the parties that the grievance and arbitration procedures set forth herein are the exclusive and sole mechanism for the resolution of any grievances, disputes, disagreements or claims made under or related to this Agreement or arising from employment at the facility.  In cases where a statutory, non-contractual right is at issue, this provision does not prevent an Officer from pursuing an action in a court of law after first utilizing the grievance procedures stated herein.  However, an Officer may not obtain or enforce an award more than once nor pursue a court action if an adverse arbitration award is entered.  This provision does not obligate the Union or the Officer to pursue arbitration if after full consultation, either decides not to pursue arbitration.

Collective Bargaining Agreement, Def.'s Mot. to Dismiss, Ex. C, Section 11.7.F.

On December 29, 2010, Ms. Blocker was terminated from her job.  The reason given for her termination was refusal of a post assignment, but Ms. Blocker contends this reason was merely a pretext.  She filed a discrimination complaint with the EEOC and PHRC, and, after mediation, she was reinstated with back pay in January, 2011.  A year and a half later, on June 25, 2012, she was again terminated by the same supervisor who had been named in her previous EEOC/PHRA complaint.[3]  This time the reason given was exaggerating an incident report, which she asserts she did not do.  She claims that she witnessed a supervisory employee hit a subordinate (both African-American women) and that she reported accurately what she saw in an

---

information, Ms. Blocker provides no allegation that she was present for or personally subjected to the discriminatory conduct.  Therefore, the Court will only include here the facts relevant to the pending motion to dismiss.

[2] Defendant Community Education Centers began operating the prison at which she was employed in 2009.

[3] In her Complaint and opposition to the motion, and at oral argument, Ms. Blocker asserted that her second termination occurred on or near the one-year anniversary of her reinstatement and attempted to assign significance to that fact.  However, it is clear from the facts alleged in the Complaint that this assertion is inaccurate –she alleges that she was reinstated in January, 2011, and that she was terminated a second time in June, 2012, some 17 months after her reinstatement.

incident report. She also claims that while some video evidence of the incident was preserved, other video evidence was destroyed. Ms. Blocker alleges more generally that African-American officers were terminated for minor infractions that would garner only a warning when committed by white corrections officers, and that even Caucasian corrections officers who committed serious infractions maintained their employment. After her termination, Ms. Blocker exhausted her administrative remedies and received a right-to-sue letter.

Ms. Blocker also alleges that she was subject to harassment, including receiving a photograph of herself with a noose drawn around her neck after being elected president of the union in 2007. She claims that she observed mismanagement at the prison and informed corporate officers, but that nothing was done to remedy the mismanagement.

**LEGAL STANDARD**

### I. Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is

not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the court adheres to certain well-recognized parameters. For one, the court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). The Court also must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand the Court turn its back on reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower*

*Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)). Finally, "if a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## II. Motion to Strike

Under Rule 12(f) of the Federal Rules of Civil Procedure, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent or scandalous matter which will not have any possible bearing on the outcome of the litigation." *Garlanger v. Verbeke,* 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (quoting *Bristol–Myers Squibb Co. v. Ivax Corp.,* 77 F. Supp. 2d 606, 619 (D.N.J. 2000)). However, motions to strike are generally viewed with disfavor by the courts and "are often not granted if there is an absence of showing of prejudice to the moving party." *Great W. Life Assurance Co. v. Levithan,* 834 F. Supp. 858, 864 (E.D.Pa. 1993). Striking a pleading is a "drastic remedy" appropriate only when the grounds for striking are "readily apparent from the face of the pleadings." *Johnson v. Anhorn,* 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004) (internal citations omitted).

To prevail, the moving party must demonstrate that "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties or [that] the allegations confuse the issues." *River Road Development Corp. v. Carlson Corporation–Northeast,* No. 89–7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990) (citing 5C C. Wright & A. Miller,

Federal Practice and Procedure, § 1382, at 809–10, 815 (1969)).  A court may also strike "redundant, immaterial, impertinent, or scandalous" matters on its own.  Fed. R. Civ. P. 12(f)(1).

**DISCUSSION**

### I. Motion to Dismiss

At oral argument and in her supplemental briefing, Ms. Blocker voluntarily withdrew her claims for respondeat superior,[4] spoliation,[5] breach of duty of good faith and fair dealing,[6] and emotional distress.[7]  Those claims, then, are dismissed with prejudice.  The Court will now examine the parties' arguments as to the remaining claims.

### A. Wrongful Termination

Under Pennsylvania law, "union employees subject to collective bargaining agreements may not pursue wrongful discharge claims against former employers." *Coppola v. Jneso-Pocono Med. Ctr.*, 400 F. App'x 683, 684 (3d Cir. 2010).  *See also Black,* 2014 WL 859313, at *4

---

[4] Ms. Blocker concedes, as she must, that respondeat superior is not a separate claim, but merely a doctrine that may be used to hold an employer liable for the acts of its employees.  *See Black v. Community Education Centers*, Civil Action No. 13-6102, 2014 WL 859313, at *7 (E.D. Pa. Mar. 4, 2014).

[5] In *Pyeritz v. Commonwealth*, 32 A.3d 687 (Pa. 2011), the Pennsylvania Supreme Court specifically held that negligent failure to preserve evidence, or spoliation, is not a cause of action under Pennsylvania law. *Id.* at 695 ("In summary, we conclude that to date, Pennsylvania law has not recognized a cause of action for negligent spoliation of evidence, and we decline to do so now.")  In her supplemental briefing, Ms. Blocker agreed to withdraw this claim, but noted that she was doing so with the understanding that she could raise the issue later and ask for sanctions or an adverse inference if certain video footage of the incident that led to her termination is not produced in discovery.  Ms. Blocker may file any discovery motions she sees fit to file, but the Court, naturally, will not rule on the spoliation issue until it is properly presented in such a motion and, in acknowledging her caveat, makes no ruling on the potential merits of an as-yet-unfiled motion.

[6] Ms. Blocker concedes that a breach of good faith and fair dealing is implied in every contract, and that therefore this count is duplicative of her breach of contract count.

[7] In her supplemental briefing, Ms. Blocker concedes that her claim for emotional distress is not a separate cause of action, but rather an element of damages she seeks for her other causes of action.

(dismissing wrongful termination claim brought by another employee of Defendant Community Education Centers and subject to the same collective bargaining agreement).  Although Ms. Blocker makes arguments about the validity of the arbitration provision in the collective bargaining agreement, she does not provide any argument that directly counters the clear Pennsylvania case law holding that wrongful termination claims are only available to at-will employees, and she does not argue that she was ever an at-will employee of Defendant.  Thus, the Court will dismiss Ms. Blocker's wrongful termination claim with prejudice.

### B. Breach of Contract

Community Education Centers argues that a provision in the collective bargaining agreement provides that arbitration is "the exclusive and sole mechanism for the resolution of any grievances, disputes, disagreements or claims made under or related to this Agreement or arising from employment at the facility."  Collective Bargaining Agreement, Def.'s Mot. to Dismiss, Ex. C, Section 11.7.F.  It contends that this arbitration provision bars any contract claims Ms. Blocker asserts in this lawsuit.  Ms. Blocker, not surprisingly, disagrees.

Another court in this district, when faced with virtually identical arguments with respect to the very same collective bargaining agreement, dismissed the plaintiff's breach of contract claim.  In *Black*, 2014 WL 859313, the court rejected the plaintiff's arguments that the arbitration provision did not preclude breach of contract lawsuits and held that the arbitration provision of the collective bargaining agreement was "a 'clear and unmistakable' agreement to arbitrate" that "plainly applies to all non-statutory, contractual grievances arising from her employment."  *Id.* at *3.  It disagreed with the plaintiff's "split cause of action" doctrine argument, in which she contended that she had to bring her all of her claims in one suit lest she waive them by not including them, holding that the doctrine does not somehow trump the

arbitration clause. The court also held that the arbitration clause was not inconspicuous or unconscionable. Finally, in *Black*, the court disagreed with the plaintiff's argument that Community Education Centers was collaterally estopped from arguing that the arbitration clause barred her breach of contract claim because the Court of Common Pleas of Delaware County overruled preliminary objections in a similar employment case involving the same defendant, noting that preliminary objections are not a judgment on the merits entitled to preclusive effect.[8] *Id.* at *4.

The Court sees no reason to deviate from the well-reasoned opinion in *Black*. The arbitration provision is conspicuous and unambiguous, and Ms. Blocker's proposed interpretation, which would allow employees to bring any and all causes of action based on their employment in a court of law, flies in the face of the clear meaning of the arbitration provision. Moreover, the fact that a state court overruled preliminary objections or denied a motion for summary judgment has little bearing on this action, as neither action by the state court constituted a judgment on the merits. In her supplemental briefing, Ms. Blocker contends that she had an employment contract with Community Education Centers separate and apart from the collective bargaining agreement, citing to "policy number 300.27," and attempts to distance herself from the collective bargaining agreement by arguing that she never signed it. The only contract she cites in her breach of contract claim or even mentions in her Complaint, however, is the collective bargaining agreement, and in paragraph 6 of her Complaint, she states that, "The relationship between the Employer and corrections officers such as Officer Blocker is governed by a collective bargaining agreement." Thus, any argument that some other unspecified

---

[8] In its supplemental briefing, Community Education Centers contends that the opinion in *Black* collaterally estops Ms. Blocker from asserting any claims that resemble the claims dismissed in *Black*. Because Ms. Blocker was not a party to *Black*, however, that case, while it may be persuasive, has no preclusive effect on Ms. Blocker's action.

employment contract governs her relationship with the Defendant or that the collective bargaining agreement somehow does not must fail. The Court will, therefore, dismiss Ms. Blocker's breach of contract claim with prejudice.

### C. Unjust Enrichment

Unjust enrichment claims are barred when the parties' relationship relies on a written contract, unless there is a dispute as to the contract's validity. *See Premier Payments Online, Inc. v. Payment Sys. Worldwide*, No. 11-3429, 2012 WL 262680, at *11 (E.D. Pa. Jan. 27, 2012). Ms. Blocker does not argue that the contract is not valid. She simply argues, without legal support, that dismissing her unjust enrichment claim would be premature because it is not yet clear that her remedies at law are sufficient. Her argument, with no citation to legal authority, cannot defeat well-settled law that a valid contract prevents claims for unjust enrichment, so the Court will dismiss this count with prejudice.

### D. Negligence and Gross Negligence

In her negligence and gross negligence claims, Ms. Blocker essentially contends that Community Education Centers negligently supervised its employees and allowed them to discriminate based on race. These claims are pre-empted by the PHRA. *Randler v. Kountry Kraft Kitchens*, No. 11-cv-0474, 2012 WL 6561510, at *14 (M.D. Pa. Dec. 17, 2012). Ms. Blocker concedes that to the extent her negligence and gross negligence claims mirror her retaliation claims, they are pre-empted, but argues that she pleads "negligent conduct outside of the realm of discriminatory intent, conduct that nevertheless violates employment promises." To the extent she attempts to plead negligence or gross negligence claims with respect to breaches

9

of "employment promises," such claims must suffer the same fate as her breach of contract claim.[9] Therefore, the Court will dismiss these claims with prejudice.

### E. Title VII & PHRA Retaliation[10]

Community Education Centers argues that Ms. Blocker has failed to allege any facts that would support a causal link between her termination and her previous filing with the EEOC to support a retaliation claim. In particular, it points to the long gap in time between her original EEOC filing in December of 2010 and her termination in June of 2012. *See, e.g., Blakney v. City of Philadelphia*, No. 13–3062, 2014 WL 1045300, at *2 (3d Cir. Mar. 19, 2014) ("We have found that a temporal proximity of two days is unusually suggestive of causation, . . . but have held that a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive") (internal citation omitted). Ms. Blocker's only response is that she has pleaded plenty of facts to support discriminatory intent. She does not, however, identify any specific allegations that would connect her termination with her protected activity.[11]

Recently, the Third Circuit Court of Appeals has noted that when temporal proximity is lacking, a plaintiff must allege other facts supporting an inference of retaliation, such as "a 'pattern of antagonism' subjecting plaintiff to a 'constant barrage of written and verbal warnings and ... disciplinary actions, all of which occurred soon after plaintiff's initial complaints,'" or that the employer provided "inconsistent reasons for terminating the employee." *Id.* at *3 (quoting

---

[9] The paragraphs that she cites in support of this argument merely state that the Defendant "breached various duties" it had to her as an employee. To the extent these allegedly breached duties refer to something other than contractual duties, Ms. Blocker has not sufficiently pleaded facts that would support such a cause of action, as she fails to identify what those duties might be and how Defendant breached them.

[10] "Claims under the PHRA are interpreted coextensively with Title VII claims." *Atkinson v. LaFayette College*, 460 F.3d 447, 454 n. 6 (3d Cir. 2006).

[11] As noted above, to the extent Ms. Blocker attempts to argue that she was terminated on the one-year anniversary of her reinstatement, this argument must fail as it has no basis in fact – according to her own assertions, she was terminated approximately 17 months after being reinstated.

*Robinson v. S.E. Pa. Transp. Auth.,* 982 F.2d 892, 894 (3d Cir. 1993)).  Although Ms. Blocker's Complaint is full of allegations of racial discrimination against *other employees* and *prison inmates* and of general differences in treatment between white and African-American employees, Ms. Blocker fails to allege that she personally was subjected to such discriminatory or harassing acts, or even that she witnessed them.

The only arguable link she identifies in her Complaint between her protected activity and her termination is that the same supervisor terminated her each time, which is hardly surprising if she had the same job at both times, and that fact alone is not enough to support an inference of unlawful retaliation.  The only arguable harassment or antagonism she identifies in her Complaint is a failure to discipline an African-American officer about whom she and other African-American employees complained to management a few months before her termination, as well as the receipt of a photograph of herself with a noose drawn around her neck after being elected president of the union in 2007 – some five years before her termination and three years before the filing of her first EEOC complaint.  Two incidents, neither of which has been alleged to have occurred with any temporal proximity to Ms. Blocker's first EEOC complaint or reinstatement, do not add up to a pattern of antagonism.  Ms. Blocker's retaliation claims therefore must be dismissed.  The Court will allow Ms. Blocker to amend this claim, however, because it is being dismissed for insufficiently pleaded facts.

    **F.  Negligent Misrepresentation/Fraud**

Ms. Blocker claims that Community Education Centers "negligently and/or fraudulently mischaracterized the circumstances leading to Officer Blocker's most recent termination."

To state a claim for negligent misrepresentation, a plaintiff must allege "1) a misrepresentation of a material fact; 2) made under circumstances in which the misrepresenter

ought to have known its falsity; 3) with an intent to induce another to act on it; and 4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bilt–Rite Contractors, Inc. v. The Architectural Studio,* 866 A.2d 270, 277 (Pa. 2005) (internal quotation omitted). To state a claim for fraud, a plaintiff must allege "[1] misrepresentation, [2] a fraudulent utterance thereof, [3] an intention to induce action thereby, [4] justifiable reliance thereon and [5] damage as a proximate result." *V-Tech Services, Inc. v. Street*, 72 A.3d 270, 275 (Pa. Super. 2013) (internal quotation omitted).

Here, Ms. Blocker does not provide any specific instances of misrepresentation, nor does she plead that she relied on any misrepresentations to her detriment. Indeed, as these claims are based on her employer allegedly misrepresenting the cause of her termination, it is difficult to see how she could possibly plead that she justifiably relied on false statements about the circumstances surrounding her termination. Thus, the Court will dismiss these claims with prejudice.

**G. Harassment**

Ms. Blocker does not specify what legal theory or doctrine she is referring to in her harassment claim; she merely alleges in that claim that Defendant engaged in a "pattern of discriminatory and abusive behavior." *See* Compl. ¶ 159. Community Education Centers assumes she is bringing a hostile work environment claim under Title VII and/or the PHRA and argues that she has failed to exhaust her administrative remedies as to such a claim. *See Webb v. City of Philadelphia,* 562 F.3d 256, 262-63 (3d Cir. 2009) ("Before bringing suit under Title VII in federal court, a plaintiff must first file a charge with the EEOC. . . . Accordingly, we have held the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.")

(internal quotation omitted).  In response, Ms. Blocker contends that "more than one type of harassment can exist, however, not just harassment in relation to Title VII discrimination." *See* Pl.'s Opp. at 23.  To support this contention, she cites a criminal statute, which cannot support her civil claim, and discusses contractual harassment, which is pre-empted by the PHRA, as noted even in the cases she cites.  *See, e.g., King v. M.R. Brown, Inc.,* 911 F. Supp. 161, 168 (E.D. Pa. 1995) ("The PHRA also preempts common law claims for breach of contract when the only act that would support the common law claim is the act of discrimination.").

As to the argument that she failed to exhaust any Title VII or PHRA hostile work environment claim, Ms. Blocker argues that she did properly exhaust her harassment claim because it "is not itself an independent category of discrimination requiring separate notice," but rather was embodied in her EEOC retaliation claim.  *See* Pl.'s Opp. at 23.  In her latest EEOC filing, however, no harassment rising to the level of a Title VII violation is mentioned – the charge only discusses the circumstances surrounding her latest termination.  Thus, the Court will dismiss Ms. Blocker's "harassment" claim without prejudice to raising it again should she properly exhaust her administrative remedies.

**H.  Libel and Slander**

Ms. Blocker claims that Community Education Centers libelled and/or slandered her by "publishing and/or disseminating" the pretextual reason for her termination (*i.e.*, that she falsified a report) to detectives, the office of the district attorney, the department of labor, the EEOC, the PHRC, and others at the prison.  Community Education Centers argues that she has not sufficiently pleaded either cause of action, as she has not pleaded what statements were made, who made them, or how or when they were published.  "Under Federal Rule of Civil Procedure 8(a), a defamation plaintiff does not have to plead the precise defamatory statements,

nor must she specifically name the person who made the statements. . . . As long as a defamation count provides sufficient notice to defendants it states a claim." *Knit With v. Knitting Fever, Inc.*, Civil Action Nos. 08-4221, 08-4775, 2009 WL 973492, at *6 (E.D. Pa. Apr. 8, 2009) (internal citations and quotations omitted). Here, Ms. Blocker alleges the general substance of the defamatory statements (that she falsified a report in the course of her employment) and that Community Education Centers published these defamatory statements to various third parties.

Defendant further argues that to the extent the statements were made in criminal, EEOC, or unemployment proceedings, it is entitled to absolute immunity. *See, e.g., Hurst v. Jiffy Lube*, No. CIV. A. 00-CV-133, 2000 WL 1790112, at *6 (E.D. Pa. Dec. 6, 2000). It further contends that to the extent the statements were made in connection with Ms. Blocker's actual employment termination, it is entitled to invoke the privilege that protects employers from defamation charges when defamatory statements are published in the course of disciplining or terminating an employee. *See, e.g., Sobel v. Wingard*, 531 A.2d 520, 522 (Pa. Super. 1987) ("An employer has an absolute privilege to publish defamatory matters in notices of employee terminations. . . . Moreover, evaluations of an employee by an employer are deemed to be consented to by the employee. . . . Consent is an absolute privilege.") (internal citations omitted).

It is not at all clear from Ms. Blocker's Complaint whether these privilege and immunity arguments apply to any or all of the alleged defamatory statements. For instance, to the extent that she alleges that the false reasons for her termination were published to other prison employees, it is not clear whether those other prison employees were people who were involved in the termination in some way, which would make the statements privileged, or who were not involved, which would not make the statements not privileged. Likewise, although Ms. Blocker argues in supplemental briefing that the Defendants are not entitled to immunity for statements

made in quasi-judicial proceedings because those statements were made in proceedings to which she was not a party, none of the facts disclosed in her supplemental briefing regarding the circumstances surrounding the alleged defamation are included in her Complaint, so the Court cannot tell whether the statements were pertinent to the judicial or quasi-judicial proceedings in which they were made (if, in fact, the statements were made during the course of such a proceeding, which is not entirely clear, either).[12] *See Post v. Mandel*, 507 A.2d 351, 355-56 (Pa. 1986) (judicial immunity does not protect a defamatory statement that was not "issued in the regular course of judicial proceedings as a communication pertinent and material to the redress sought").

Privilege and immunity arguments amount to affirmative defenses, and "[g]enerally, the burden of establishing a privilege in a defamation case is the defendant's." *Koch v. American Tel. & Tel. Co.*, CIV. A. No. 88–9208, 1989 WL 37123, at *4 (E.D. Pa. 1989). The Court agrees that Community Education Centers would be immune to suit on libel or slander claims that are based on communications made during and pertinent to judicial or quasi-judicial proceedings and would be entitled to a privilege for at least some communications made in the course of Ms. Blocker's termination. From the Complaint, however, the Court cannot determine if the communications of which Ms. Blocker complains fits into these categories. Therefore, the Court will deny Community Education Centers' motion to dismiss the libel and slander claims at this time.[13]

---

[12] Indeed, in her supplemental briefing, Ms. Blocker refers to defamatory statements made to AIG Insurance, medical professionals, and potential employers. Her Complaint, however, mentions nothing about statements to AIG Insurance, medical professionals or potential employers, so any such alleged communications are irrelevant to the analysis here.

[13] The Court notes that although these are state law claims and the sole federal claim in this case will be dismissed, it appears from the Complaint that Ms. Blocker (a Pennsylvania resident) and Community Education Centers (a New Jersey corporation) are of diverse citizenship. Ms. Blocker seeks "in excess of

**II.     Motion to Strike**

Community Education Centers asks the Court to strike paragraphs 11-13, part of paragraph 14, 18-93 and 105-06 of the Complaint.  It generally argues that these paragraphs are irrelevant to what Community Education Centers believes is the core cause of action in Ms. Blocker's Complaint – her retaliation claim.  The Court will strike two statements, which, as Judge DuBois found in *Black* when faced with virtually identical allegations, "have no possible relation to the controversy."  *See Black*, 2014 WL 859313, at *8.  Those statements are found in paragraphs 43 ("That tormented officer ultimately killed his wife") and 45 ("his wife might be alive today").  The Court will deny the motion to strike with respect to the other paragraphs Community Education Centers identifies.

**CONCLUSION**

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss in part and deny it in part.  Likewise, the Defendant's Motion to Strike will be granted in part and denied in part.  An appropriate Order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

$500,000" in damages for each of her claims, and while it seems unlikely that she could recover that amount for her libel and slander claims, it is not clear from the face of the Complaint that she could not recover more than $75,000 for those claims.